UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ANKOR GUTIERREZ,                    :
                                    :
                 Petitioner         :
          **FILED**                 :
          **SCRANTON**              :
     v.       JUN 2 2 2006          :   CIVIL NO. 3:CV-06-0384
                                    :
LOUIS S. FOLINO PER _____ :   (Judge Kosik)
                 DEPUTY CLERK       :
                 Respondent         :

## **M E M O R A N D U M**

### I.   **Introduction**

This petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 was filed on

February 21, 2006, by Ankor Gutierrez, an inmate currently confined at the State

Correctional Institution at Greene (SCI-Greene), Pennsylvania.  Petitioner has submitted the

required filing fee in this matter.  Named as Respondent is Louis S. Folino, Superintendent at

SCI-Greene.  In the petition, Gutierrez challenges his 2001 conviction by the Lebanon

County Court of Common Pleas on charges of Attempted Homicide, Aggravated Assault,

Reckless Endangerment and Carrying an Unlicensed Firearm.

In accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), the court

issued an Order on February 22, 2006 (Doc. 4), advising Petitioner that he could either

proceed on his petition as filed, or withdraw his petition and file a new § 2254 petition within

the one year statute of limitations period prescribed by 28 U.S.C. § 2244(d).  He was advised

that his failure to respond would result in the court proceeding on his petition as filed.

Because no response was received, an Order to Show Cause was issued on May 2, 2006,

directing Respondent to answer the allegations in the petition within twenty (20) days. (Doc.

6.) Following an enlargement of time, a response and exhibits thereto were filed on June 5,

2006. (Docs. 12, 13.) No traverse has been filed by Petitioner. For the reasons that follow,

the petition will be denied.

## II.    **Background**

The factual and procedural history of this case as extracted from the Pennsylvania

Superior Court's opinion dated March 23, 2005, on appeal from the denial of PCRA relief, is

as follows:

> On January 26, 2001, Defendant was charged with one count of Criminal
> Attempt to Commit Criminal Homicide, two counts of Aggravated Assault, one
> count of Recklessly Endangering Another Person and one count of Firearms
> not to be Carried without a License in connection with a shooting that occurred
> in the City of Lebanon, Lebanon County, Pennsylvania.
>
> On September 4-5, 2001, Defendant was tried before a jury regarding these
> charges. At trial, Julius Green testified on behalf of the Commonwealth.
> Green testified that he and Defendant were acquaintances. (N.T. 9/5/01 at 53).
> However, one of Green's best friends, Jamar Bair, had a dispute with
> Defendant, thus creating animosity between Defendant and Jamar Bair's
> friends. (N.T. 9/5/101 at 54).
>
> On September 27, 2000, Green testified that he was driving around in his
> girlfriend's white Lexus vehicle with a friend, Luis Gonzalez. (N.T. 9/5/01 at
> 55). While Gonzalez accompanied Green and drove the vehicle for a period of
> time, as Green was not authorized to drive a vehicle as a condition of his parole
> due to a Driving Under the Influence conviction, Green drove the vehicle after
> taking Gonzalez home around 1:00 or 2:00 p.m. (N.T. 9/5/01 at 56).
> Thereafter, Green proceeded to drive south on Seventh Street. (N.T. 9/5/01 at
> 57-58). Green slowed the vehicle as he drove by Defendant, wanting to talk
> with Defendant about the animosity that had arisen in connection with Jamar
> Bair. (N.T. 9/5/01 at 59).

2

After driving past Defendant, Green turned his vehicle onto Mifflin Street, made a U-turn, and faced Seventh Street. (N.T. 9/5/01 at 60). When Defendant reached the area at which Green was located, Green rolled down the window of the vehicle. (N.T. 9/5/01 at 61). Green testified that he asked Defendant if Defendant was trying to be a gangster or a killer. (N.T. 9/5/01 at 61). Defendant replied, "I don't know, you tell me." (N.T. 9/5/01 at 61). Green then pulled his vehicle into an adjacent alley, as Green thought that he and Defendant would fistfight each other. (N.T. 9/5/01 at 62, 65). Defendant remained standing with his bicycle, about fifteen to twenty feet away from Green. (N.T. 9/5/01 at 64). Green testified that he was about to exit the vehicle when Defendant brandished a gun, pointed it at Green and fired five to seven shots. (N.T. 9/5/01 at 65). Green drove away escaping physical injury. (N.T. 9/5/01 at 65).

Green drove home and parked the vehicle in the garage (N.T. 9/5/01 at 66). Green then received a telephone call from his parole officer, Tina Litz. (N.T. 9/5/01 at 67-68). As Green had been released from prison on parole only two days prior to September 27, 2000, Litz wanted to schedule a time at which she could meet with Green to discuss the supervision of his parole. (N.T. 9/5/01 at 86). When Litz spoke to Green, Green told her that he did not want to come to her office because he and two friends had been shot earlier in the day by a person on a bicycle. (N.T. 9/5/01 at 88). Green did not tell her the identity of the person who shot at him. (N.T. 9/5/01 at 88).

Litz then contacted the Lebanon City Police Department in order to confirm whether a shooting had occurred. (N.T. 9/5/01 at 90). After confirming that a shooting had occurred, Litz told the police that Green was involved in the shooting. (N.T. 9/5/01 at 90). The next day, Green came to Litz's office, where he met with Detective Hirschbock and another detective from the Lebanon City Police Department. (N.T. 9/5/01 at 91). At that time, Green told the detectives and Litz that Defendant had shot at him. (N.T. 9/5/01 at 93). While Green originally told the detectives that he had not been driving the vehicle at the time of the shooting and that others were with him when the shooting occurred, at a subsequent interview, Green admitted that he was alone and driving the vehicle at the time at which the shooting occurred. (N.T. 9/5/01 at 79.)

Detective Hirschbock of the Lebanon City Police Department also testified on behalf of the Commonwealth. Detective Hirschbock testified that he arrived at the scene of the shooting at approximately 3:00 p.m. on September 27, 2000. (N.T. 9/5/01 at 20). After Detective Hirschbock discovered that a white Lexus vehicle had been involved in the shooting, and because he knew that Green drove a white Lexus vehicle, Detective Hirschbock went to Green's house. (N.T. 9/5/01 at 21-22). Green's mother told Detective Hirschbock that Green

was not there, but she gave the Detective permission to look at the white Lexus vehicle parked in the garage. (N.T. 9/5/01 at 23). Detective Hirschbock observed that there was fresh bullet damage to the driver's side of the vehicle. (N.T. 9/5/01 at 23).

Defendant testified on his own behalf at trial, presenting a different sequence of events occurring on September 27, 2000 than the events disclosed by Green. Defendant testified that between approximately 1:00 p.m. and 3:00 p.m. on September 27, 2000, he was visiting his cousin's sister, Stacy Daniels, at her house located on Mifflin Street. (N.T. 9/5/l01 at 113). As Defendant was with Daniels at the time of the shooting, Defendant testified that he could not shoot Green. (N.T. 9/5/01 at 117). Defendant further testified that he did not own a gun on the date of the shooting. (N.T. 9/5/01 at 117).

Stacy Daniels testified an alibi witness on behalf of Defendant. On direct examination, Daniels testified that Defendant arrived at her house on September 27, 2000 at 1:30 p.m., but that she could not recall the time that Defendant left her house. (N.T. 9/5/01 at 129). However, on cross-examination, Daniels testified that she did not remember the date on which Defendant visited her at her house, nor did not remember the day of the week on which this visit occurred. (N.T. 9/5/01 at 130-131). She further testified that she could not remember the time at which Defendant arrived at her house on the date in question or whether Defendant was still at her house at the time of the shooting. (N.T. 9/5/01 at 131, 133).

Defendant also presented the testimony of an eyewitness to the shooting, Beverly Oberlein. Oberlein testified that at 2:15 p.m. on September 27, 2000, a light colored vehicle drove by a boy on a bicycle on Seventh Street and that the person in the vehicle fired gun shots at the boy on the bicycle. (N.T. 9/5/01 at 137). Oberlein testified that she had not been drinking on that date. (N.T. 9/5/01 at 138). However, Detective Hirschbock testified that when he interviewed her directly after the incident, he thought that she was intoxicated. (N.T. 9/5/01 at 146). Detective Hirschbock further testified that Oberlein gave inconsistent statements to the detectives. (N.T. 9/5/01 at 146). Officer Eggert, who arrived on the scene directly after the incident, also testified that he believed that Oberlein was under the influence of alcohol at the time. (N.T. 9/5/01 at 151). Officer Eggert further testified that Oberlein's statements were inconsistent with the statements of others located on the scene of the shooting. (N.T. 9/5/01 at 152). Detective Collins, who also arrived at the scene of the incident, also interviewed Oberlein and thought that she was under the influence of alcohol and highly intoxicated when he spoke with her. (N.T. 9/5/01 at 156-157).

4

(Doc. 13, Ex. G, Pa. Super. Ct. Op. dated 3/23/05.)

Petitioner was convicted of the charges against him, and on October 31, 2001, sentenced to an aggregate term of 8½ to 25 years of imprisonment.  A post-sentence motion for a new trial or judgment of acquittal was thereafter denied on February 14, 2002.  A direct appeal to the Pennsylvania Superior Court was filed on March 15, 2002.  The Superior Court affirmed the judgment and sentence on April 7, 2003.  A petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541 et seq., was filed by Petitioner on July 1, 2003.  A supplemental PCRA petition was submitted on July 21, 2003.  PCRA counsel was appointed for Petitioner.  On June 10, 2004, the PCRA petitions were denied.  The Superior Court of Pennsylvania affirmed the trial court's denial of the PCRA petitions on March 23, 2005.  (Id., Ex. G.)  A Petition for Allowance of appeal to the Pennsylvania Supreme Court was denied on October 5, 2005.  (Id., Ex. H.)

The instant petition seeking federal habeas corpus relief was filed here on February 21, 2006.  Petitioner raises the following four claims:

1. Ineffective assistance of trial counsel in failing to object and request a mistrial when Commonwealth witness Detective Hirschbock testified as to Petitioner's involvement in unrelated criminal activity;

2. Ineffective assistance of trial counsel in failing to request a jury instruction as to the offense of voluntary manslaughter in connection with the charge of criminal attempt to commit criminal homicide;

3. Ineffective assistance of trial counsel in failing to present the trial testimony of eye witnesses Helen Hoffman and Kamala Prsaud;

4. Denial of due process by trial court in failing to provide an evidentiary hearing with regard to his PCRA petition.

(Doc. 1, Pet. at 5-6.)

III.   **Standard of Review**

"The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).  Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  See generally, Moore v. Morton, 255 F.3d 95, 104-05 (3d Cir. 2001).  The Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning.  Williams v. Taylor, 529 U.S. 362, 404-405 (2000).  As explicated in Bell, 535 U.S. at 694:

> A federal habeas court may issue the writ under the 'contrary to'
> clause if the state court applies a rule different from the
> governing law set forth in our cases, or if it decides a case
> differently than we have done on a set of materially
> indistinguishable facts . . . . The court may grant relief under the
> 'unreasonable application' clause if the state court correctly
> identifies the governing legal principle from our decisions but
> unreasonably applies it to the facts of the particular case . . . . The
> focus of the latter inquiry is on whether the state court's
> application of clearly established federal law is objectively
> unreasonable . . . .

This deferential standard of review applies to state court decisions on ineffective assistance of counsel claims. Id. at 694-98.

## IV.   Analysis

### A.   Ineffective Assistance of Counsel claims

The "clearly established federal law" applicable to Petitioner's claims of ineffective assistance of counsel is the familiar two-pronged inquiry the United States Supreme Court articulated in Strickland v. Washington, 466 U.S. 668, 688 (1984): (1) was counsel's performance deficient, and (2) did the deficient performance prejudice the defense? Prejudice has been defined as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. See also Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir. 1992) ("[A] petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the result would have been different."). On habeas corpus review, the pertinent inquiry is whether the state court decision is contrary to, or an objectively unreasonable application of, Supreme Court precedent. Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004).

Petitioner in this case advances no argument that the state court decisions are contrary to extant United States Supreme Court precedent.[1] In this regard, Petitioner does not maintain that the ineffective assistance test applied by the state courts is inconsistent with the test established in Strickland and developed in its progeny. Furthermore, there does not

---

[1] In his Memorandum in support of his petition, Petitioner states that "[e]xamination of Pennsylvania decisions disclose a totally harmonious relationship between Strickland and the rule adopted by the court of Pennsylvania for determining ineffectiveness . . . ." (Doc. 1 at 11.)

appear to be any Supreme Court case that found ineffective assistance under circumstances indistinguishable or even similar to those presented here. Our Court of Appeals has held that "a state court decision that applied the Pennsylvania test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent." Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004), citing, Werts v. Vaughn, 228 F.3d 178, 202-204 (3d Cir. 2000), cert. denied, 532 U.S. 980 (1987). The Pennsylvania Superior Court applied the governing Pennsylvania test in this case, and its decision, therefore, cannot be regarded as "contrary to" Supreme Court rulings.

The dispositive question, then, is whether any of the state court rulings at issue here reflect an unreasonable application of the Strickland test. Petitioner argues that the trial court made an unreasonable determination in finding that he was not denied effective assistance of trial counsel.   To carry his burden on this claim, Petitioner "must demonstrate that 'the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland.'" Rompilla, 355 F.3d at 250.  Each asserted instance of ineffective assistance will be considered against this standard.

1.     **Trial counsel's failure to object and request mistrial when Detective Hirschbock testified to Petitioner's involvement in unrelated criminal activity**

Petitioner argues that he was stripped of his presumption of innocence when trial counsel failed to object/request a mistrial regarding Commonwealth witness DetectiveHirschbock's testimony as to his prior contacts with Petitioner.  The relevant testimony, as extracted from the trial transcript, is as follows:

8

> Q:    And what did you do with regard to seeking the
>        Defendant?
>
> A:    I had checked through our local data base on our computer as far as
>        arrests, contact with people, and I had see an address had come up of
>        730 North 7[th] Street as a possible address to go look for Mr. Gutierrez.

(Doc. 13, Ex. Trial Transcript at 38-39.) Petitioner claims that Hirschbock's testimony that

his address was in the database containing people who had been arrested caused the jury to

infer that he had been involved in prior unrelated criminal activity, and therefore prejudiced

him.

Both the Trial Court and the Pennsylvania Superior Court addressed this issue and

found that Detective Hirschbock's comment was a "brief passing reference" with no

resulting prejudice. The Trial Court found that the testimony did not state that the address

was obtained by searching a database of people who had been arrested in the past.  Rather,

the testimony states that the address was obtained by searching through a database which

stores records of arrests and other contact with people.  (Doc. 13, Ex. F at 7.)  Thus, the

database searched could include any contact that one may have with the police department,

not only contact as an alleged perpetrator of crime.  As such, it could not be concluded that

Hirschbock's testimony caused the jury to infer that Petitioner was necessarily involved in

prior unrelated criminal activity.  Further, even if the database had only contained names of

people arrested in the past, there was no showing that prejudice resulting from the reference.

On appeal, the Pennsylvania Superior Court agreed that mere passing

references to criminal activity, assuming Hirschbock's testimony could even be considered

such, will not require reversal unless the record indicates resulting prejudice. See

9

Commonwealth v. Blystone, 725 A.2d 1197, 1204 (Pa. 1999).  Further, a trial counsel's decision not to request a limiting instruction is not unreasonable where it might serve to emphasize what might otherwise go relatively unnoticed by the jury.  See Commonwealth v. Copenhefer, 719 A.2d 242, 253 (Pa. 1998), cert. denied, 528 U.S. 830 (1999).  (Doc. 13,Ex. G at 10.)

This court finds that the state court's ruling that Petitioner was not denied ineffective assistance of counsel due to his failure to object/seek a mistrial is not contrary to or an unreasonable application of the Strickland principles.  Where inaction of defense counsel might reasonably be regarded as a sound tactical decision, a finding of ineffective assistance cannot be reached.  Burger v. Kemp, 483 U.S. 776, 794-95 (1987.  "[S]ubstantial deference is to be accorded to counsel's tactical decisions."  United States v. Wiener, 127 F.Supp.2d 645, 648 (M.D. Pa. 2001).  Detective Hirschbock's response to the Commonwealth's question was nothing more than a brief, passing reference regarding Hirschbock's investigation.  The data base referred to by Hirschbock contained people he had contact with, not necessarily that he had arrested.  As such, any request for a mistrial by counsel would have been unsuccessful.  Further, if counsel had pursued the issue, it is likely he would have merely drawn attention to the possibility of a prior criminal history on the part of Petitioner. No prejudice was demonstrated, and this claim of ineffective assistance of counsel fails.  As such, no error by the state court with respect to this issue has been shown.

2.      **Ineffective assistance of trial counsel in failing to request a jury instruction on the offense of voluntary manslaughter in connection with the charge of criminal attempt to commit criminal homicide**

Petitioner maintains that because the evidence presented at trial would prove that he acted in self-defense, a voluntary manslaughter jury instruction was constitutionally necessary.[2] He claims that the crime of criminal attempt to commit criminal homicide incorporates only first-degree murder and as such, trial counsel was ineffective in failing to request an instruction on voluntary manslaughter. Petitioner argues that had the jury been instructed on voluntary manslaughter, when the jury compared the elements necessary for first degree murder, they would have acquitted him of the criminal attempt to commit criminal homicide charge. (Id. at 17.)

This issue was also addressed by both the PCRA court and the state Superior Court. The PCRA court found that counsel could not be deemed ineffective for failing to request a voluntary manslaughter instruction in that an instruction regarding the offenses of first degree murder and voluntary manslaughter were not warranted. The court properly instructed the jury regarding the offense of criminal attempt to commit criminal homicide. The instruction given reflects the instruction suggested by Pa.S.S. J.I. (Crim.) §12.901A. In this case Petitioner was not charged with homicide. Rather, he was charged with Criminal Attempt to Commit Criminal Homicide. A charge other than as to the elements of criminal homicide would have been inappropriate. Further, at trial Petitioner argued that he was not the individual who fired guns shots at the victim. An instruction that Petitioner fired shots out of

---

[2] Petitioner cites to the testimony of Green in support of his argument that Green "pursued" and "provoked" him. ((Doc. 1, Supporting Memorandum at 15-17.)

fear or provocation would be totally inconsistent with the defense's theory of the case. (Doc. 13, Ex. F at 11.)

On appeal regarding this issue, the Pennsylvania Superior Court examined the instruction given to the jury on criminal attempt to commit criminal homicide (Doc. 13, Ex. C, T.T. Closing Statement and Jury Charge at 17-19), and, referencing the Pennsylvania Standard Jury Instructions § 12.901A, found it to be an accurate summary of the law regarding attempted criminal homicide. (Doc. 13, Ex. G at 12.) The Superior Court further noted Petitioner's misplaced reliance on the case of Commonwealth v. Reese, 352 A.2d 143 (Pa Super. 1975) as support for his position in that Pennsylvania does not recognize a crime such as "attempted voluntary manslaughter." (Id. at 13.) Petitioner also failed to demonstrate any prejudice and it was clear that any instruction given as to voluntary manslaughter would be inconsistent with the defense's alibi strategy.

The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every element necessary to constitute the crime with which he is charged. In re Winship, 397 U.S. 358 (1970). A jury instruction that omits or materially misdescribes an essential element of an offense as defined by state law relieves the state of its obligation to prove facts constituting every element of the offense beyond a reasonable doubt, thereby violating the defendants' due process rights. See Carella v. California, 491 U.S. 263, 265 (1989) (per curiam). In reviewing the instruction given by the trial court, it is clear that the instruction was based upon the facts of the case and the charge against Petitioner of criminal attempt to commit criminal homicide. Trial counsel's failure to request a charge on a crime that does not exist in Pennsylvania (criminal attempt to commit voluntary

12

manslaughter) is not ineffective assistance of counsel.  Further, counsel's failure to request

an instruction on voluntary manslaughter, which totally contradicts the defense alibi theory of

the case, also cannot be found to be ineffective.  Accordingly, this ground is found to be

without merit.

### 3.    Ineffective assistance of trial counsel in failing to call witnesses

In the third ground of the pending habeas petition, Petitioner claims that counsel was

ineffective in failing to call two witnesses at trial.  Specifically, he contends that counsel

failed to present the testimony of eye witnesses Helen Hoffman and Kamala Prsaud.

According to Petitioner, when the police arrived at the scene of the shooting, they

interviewed eye witness Helen Hoffman and received information that Hoffman witnessed

gunfire coming from Greene's vehicle.  The police report was provided to defense counsel in

pretrial discovery.  In addition, upon arriving at the scene the police interviewed eye witness

Kamala Prsaud and received information that the person on the bicycle (the alleged shooter)

was a dark-skinned individual, and therefore did not describe him.

Petitioner does not contest the standard used by the state courts in evaluating this

claim.  To establish a claim of ineffectiveness for failure to call a witness, a defendant must

establish that: (1) the witness existed; (2) the witness was available to testify; (3) counsel was

informed of the existence of the witness or where counsel should otherwise have known of

him; (4) the witness was prepared to cooperate and testify for defendant at trial; and (5) the

absence of the testimony prejudiced defendant so as to deny him a fair trial.  See

Commonwealth v. Ervin, 766 A.2d 859, 865 (Pa. Super. 2000).  Further, ineffective

assistance of counsel for failure to call witnesses will not be found where a defendant fails to

13

provide affidavits from alleged witnesses indicating their availability and willingness to cooperate with the defense. <u>Commonwealth v. Khalil</u>, 806 A.2d 415, 422 (Pa. Super. 2002). In the context of an ineffective assistance of counsel claim based upon a failure to call a witness, the habeas petition "must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result." <u>Patel v. United States</u>, 19 F.3d 1231, 1237 (7th Cir 1994)(citation omitted).

The Pennsylvania Superior Court found that based on the record Petitioner failed to demonstrate how the outcome of the trial would have been different if the two additional witnesses had testified.  Specifically, Petitioner's allegations that the testimony would demonstrate that (1) the shots were fired from the victim's car and not at the victim's car and (2) the description of the shooter did not match him were found to be speculative by the Superior Court and failed to demonstrate a different outcome to the trial would have resulted. Moreover, the Superior Court emphasized that Petitioner's failure to provide affidavits from either of the proposed witnesses precluded relief under the applicable ineffective assistance standard and, as such, counsel could not be found to be ineffective for failing to raise a meritless claim.

In attempting to meet the standard articulated above for demonstrating trial counsel's alleged ineffectiveness in failing to present the testimony of Helen Hoffman and Kamala Prsaud, Petitioner relies on each witness's police interview report/statement taken at the scene of the incident. These documents, however, do not establish each witness's existence and availability at the time of trial to testify and their willingness to cooperate. Further, Petitioner has not presented affidavits from each of these witnesses regarding the foregoing. As such, it

14

cannot be said that Petitioner has established a proper factual predicate for his ineffective assistance claim. See United States v. August, 984 F.2d 705, 711 (6th Cir. 1992), cert. denied, 510 U.S. 854 (1993)(record inadequate to find ineffective assistance where defendant did not present an affidavit from any of the putative witnesses). While Petitioner advocates that the court rely on "commonsense" in evaluating this claim (Doc. 1 at 22), his claim, without the appropriate support, is without merit.

Respondent's argument is also well-taken with respect to conflicting defense theories. At trial, defense took the position that Petitioner was not present at the scene of the incident, but rather, was at the residence of Stacy Daniels.  By claiming that these two witnesses should have been called by defense counsel to offer testimony establishing what appears to be a "self-defense" claim would be contradictory to his alibi defense.  Accordingly, Petitioner's claim of ineffectiveness will be denied.

**B.     Trial court error in failing to provide evidentiary hearing on PCRA petition**

The essence of Petitioner's claim is that the PCRA court violated his right to due process by denying his PCRA petition without first conducting an evidentiary hearing.  This ground can be addressed without unnecessary elaboration.  There is no absolute right to a hearing pursuant to the Post Conviction Relief Act.  The post-conviction court may elect to dismiss a petition if it thoroughly reviews the claims presented and determines that they are without support in the record.  Commonwealth v. Neal, 713 A.2d 657 (1998).

In the instant case, the Pennsylvania Superior Court found that the PCRA court did not abuse its discretion in failing to hold an evidentiary hearing because no viable ineffective

15

assistance of counsel claims existed in the PCRA petition. (Doc. 13, Ex. G at 18.) This court has also conducted a review of Petitioner's ineffective assistance claims, finding them to be wholly without merit. Even if an evidentiary hearing had been warranted, such as with respect to the failure to call witnesses claim, as implicating the truth-determining process and therefore cognizable, Petitioner does not establish that he complied with the procedural requirements of 42 Pa.C.S. § 9545(d)(1). Accordingly, this ground is also without merit. An appropriate Order follows.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ANKOR GUTIERREZ,                          :
                                          :
        Petitioner                        :
                                          :
    v.                                    :   CIVIL NO. 3:CV-06-0384
                                          :
LOUIS S. FOLINO,                          :   (Judge Kosik)
                                          :
        Respondent                        :

## O R D E R

**NOW, THIS** 2̲2̲ᴺᴰ **DAY OF JUNE, 2006,** in accordance with the accompanying

Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1.      The petition for writ of habeas corpus is **DENIED**.

2.      The Clerk of Court is directed to mark this matter **CLOSED**.

3.      There is no basis for the issuance of a Certificate of Appealability.


                        EDWIN M. KOSIK
                        United States District Judge